IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LAURA PECINA LOPEZ, INDIVIDUALLY AND ON BEHALF OF GUSTAVO LOPEZ, DECEASED; MINORS K.P.L., G.L., S.L., AND K.L.; AND ON BEHALF OF GUSTAVO LOPEZ, SR; and GIOVANNI LOPEZ, INDIVIDUALLY AND ON BEHALF OF GUSTAVO LOPEZ, DECEASED, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON LOGISTICS, INC; AMAZON TRANSPORTATION SERVICES, INC; J.W. LOGISTICS, LLC; KEDRIN HARRIS, INDIVIDUALLY AND d/b/a ALL POINTS 360, LLC; DWANE EDWARDS, INDIVIDUALLY AND d/b/a SINNIE MAE TRUCKING; and TIMMIE TURNER, <br><br> Defendants. | Civil Action No. 3:19-CV-2424-N |

## MEMORANDUM OPINION AND ORDER

This Memorandum Order and Opinion addresses the motion for remand [2] filed by Plaintiffs Laura Pecina Lopez, individually and on behalf of Gustavo Lopez, deceased; minors K.P.L., G.L., S.L., and K.L.; and Gustavo Lopez, Sr.; and Giovanni Lopez, individually and on behalf of Gustavo Lopez, deceased (collectively, "Plaintiffs"). Because the Plaintiffs' well-pleaded complaint does not raise a federal question and because the subject matter of the action is not preempted by federal law, the Court lacks

MEMORANDUM OPINION AND ORDER – PAGE 1

subject matter jurisdiction.[1]  Accordingly, the Court grants the motion and remands this case to the 116th Judicial District Court in Dallas County, Texas.

## I. ORIGINS OF THE DISPUTE

This is a personal injury suit arising from a fatal vehicle accident that occurred on October 24, 2018, in Johnson County, Texas.  Pltfs.' First Am. Pet. 5–6 [1.46].  The accident was allegedly caused when Timmie Turner ("Turner"), a carrier for Amazon Logistics, Inc. and Amazon Transportation Services, Inc. (collectively, "Amazon"), rear-ended Gustavo Lopez while Turner was operating a Hino Box Truck at an excessive speed. *Id.* at 6.  At the time, Turner was transporting and delivering items sold by Amazon. *Id.* Gustavo Lopez died from injuries allegedly sustained from this accident. *Id.* at 7.

Plaintiffs then filed this suit in state court, alleging multiple state tort and statutory claims against Turner; Amazon; Kedrin Harris, individually and d/b/a All Points 360, LLC ("All Points"); Dwane Edwards, individually and d/b/a Sinnie Mae Trucking ("Sinne Mae Trucking"); and J.W. Logistics, LLC ("J.W. Logistics") (collectively, "Defendants").  The amended petition alleges that Amazon had a broker-carrier agreement with All Points and that All Points in turn had a broker-carrier agreement with J.W. Logistics, which "covered the pickup and delivery of Amazon shipments."  On October 14, 2019, J.W. Logistics removed the case to this Court, arguing that the state tort claims were preempted by the Federal Aviation and Administration Authorization Act ("FAAAA") and an FAAAA

---

[1] The facts in the amended petition do not support diversity jurisdiction under section 1332(a), and the removing defendant, J.W. Logistics, does not contend that diversity jurisdiction exists.

MEMORANDUM OPINION AND ORDER – PAGE 2

amendment, the Interstate Commerce Commission Termination Act ("ICCTA"). Plaintiffs subsequently filed this motion to remand.

## II. REMAND LEGAL STANDARD

District courts must remand a case if, at any time before final judgment it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (internal quotations omitted). The removing defendant "bears the burden of demonstrating that a federal question exists." *Id.*

Under the well-pleaded complaint rule, "a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law." *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (2009) (internal quotation omitted). In cases where the plaintiff has pled only state law causes of action, there is generally no federal question jurisdiction. The complete preemption doctrine is an exception to the well-pleaded complaint rule. Under this jurisdictional doctrine, a federal court may assert jurisdiction over a complaint that purports to rest on state law where the law governing the complaint is exclusively federal. *Id.* at 1273. In other words, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008) (internal quotations omitted).

MEMORANDUM OPINION AND ORDER – PAGE 3

The central inquiry in a complete preemption analysis is "whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under the state law." *Id.* Complete jurisdiction is distinct from ordinary preemption, which constitutes a defense but does not provide federal jurisdiction. *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) ("Complete preemption, which creates federal removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption') which does not."). In general, complete preemption is "less common and more extraordinary" than ordinary preemption, and the Supreme Court has found complete preemption only three times. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (indicating that the Supreme Court had found complete preemption under only the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 14C FEDERAL PRACTICE AND PROCEDURE § 3722.2 (4th ed. 2016) (indicating that the Supreme Court has found complete preemption under the LMRA, ERISA, and the National Bank Act).

### III. THE COURT HOLDS THAT THE FAAAA DOES NOT PREEMPT PLAINTIFFS' CLAIMS AGAINST J.W. LOGISTICS

J.W. Logistics' notice of removal implicates two preemption provisions of the FAAAA — section 14501(c)(1), and section 14501(b), an FAAAA amendment titled the ICCTA. Section 14501(c)(1) provides:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated

MEMORANDUM OPINION AND ORDER – PAGE 4

>with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). The ICCTA provision, section 14501(b), is more narrowly focused and reads:

>Subject to paragraph (2) of this subsection, no State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

49 U.S.C. § 14501(b)(1). J.W. Logistics argues that, as a broker, the negligence and negligent-hiring claims Plaintiffs assert against it[2] are federally preempted by these provisions and provide this Court with jurisdiction. The Court agrees that section 14501(c)(1) applies to the claims and parties here. The Court holds, however, that Plaintiffs' negligence claim does not fall within the scope of section 14501(c)(2) and assumes without deciding that the negligence-hiring claim does fall within its

---

[2] Plaintiffs refer to the Defendants collectively throughout their amended petition and do not clarify which claims are alleged against which Defendants. The amended petition alleges a variety of negligence-based claims, including negligence, gross negligence, negligence per se based on driving violations of the Texas Transportation Code, negligent entrustment, and negligent hiring. It also alleges a Texas statutory wrongful death claim. Because both parties consistently and repeatedly describe Plaintiffs' claims against J.W. Logistics as "negligence and negligent hiring" throughout the motion to remand briefing, those are the claims the Court addresses here. But, if Plaintiffs did intend to allege all the claims listed in the amended petition against J.W. Logistics, the result would not differ. Gross negligence, negligence per se, and the statutory wrongful death claim would be assessed similarly to the general negligence claim in this case, as they are all premised on the carrier driver's unsafe operation of the motor vehicle. Negligent entrustment would be assessed similarly to negligent hiring, as it more specifically addresses the transportation arrangement at the core of broker services.

MEMORANDUM OPINION AND ORDER – PAGE 5

scope but determines that the negligent-hiring claim also falls within the scope of section 14501(c)(2)'s preemption exception.

### A. The Parties and Claims Fall Within the Scope of Section 14501(c)(1) But Section 14501(b) is Inapplicable

As a threshold matter, the Court must initially determine whether J.W. Logistics is a broker within the meaning of the FAAAA and whether Plaintiffs' state common law claims constitute "a law, regulation, or other provision having the force and effect of law" that may be subject to FAAAA preemption. *See* 49 U.S.C. § 14501(c)(1). Regarding J.W. Logistics' broker status, Plaintiffs contend that the allegations in their state court amended petition do not identify whether J.W. Logistics is a broker or whether its services are interstate or intrastate in nature. Pltfs.' First Am. Pet. 5 [1.46] (stating that All Points "had a Broker Carrier arrangement with JW Logistics" but not specifying which party was the broker). Further, Plaintiffs argue that under the facts alleged in their amended petition, J.W. Logistics does not meet the FAAAA's definition of a broker, defined in part as "a person, *other than* a motor carrier or *an employee or agent of a motor carrier*." 49 U.S.C. § 13102(2) (emphasis added). The amended petition alleges that "*each Defendant was an agent of the other Defendants*," and later identifies one defendant, Turner, as a "carrier." Pltfs.' First Am. Pet. 4–5 [1.46].

The Court finds these arguments unpersuasive. First, J.W. Logistics has provided the Court with a copy of its broker authority issued by the Federal Motor Carrier Safety Administration ("FMCSA") and requests that it take judicial notice of this. Def.'s Resp. Mot. Remand Ex. 1 [10.1]. Because this is a publicly available document relevant to an

MEMORANDUM OPINION AND ORDER – PAGE 6

issue in this case, and there is no dispute as to the accuracy of this document, the Court takes judicial notice of the certificate and its identification of J.W. Logistics as a broker. *See* FED. R. EVID. 201.  This alone does not resolve Plaintiffs' remaining argument against J.W. Logistics' broker status, however, as the FMCSA's definition of "broker" is broader than that in the FAAAA.[3]

As to Plaintiffs' second argument, the Court notes initially that Plaintiffs' amended petition was filed in state court under the more lenient state pleading standard and made liberal use of collective pleadings that referenced all six defendants — even though it is implausible that all the allegations and claims in the petition are applicable to each of the defendants, who have differing roles in the transportation chain. *See Pharos Capital Grp., LLC v. Nutmeg Ins. Co.*, 999 F. Supp. 2d 947, 954 (N.D. Tex. 2014) ("[T]he federal pleading standard under Twombly and Iqbal is arguably more stringent than the Texas "fair notice" requirement.").  More significantly, the amended petition states that "Amazon Logistics, Inc. had a Broker Carrier arrangement with All Points 360 and All Points 360 had a Broker Carrier arrangement with JW Logistics." Pltfs.' First Am. Pet. 5 [1.46].  That implies that at least one and likely two parties are brokers.  Taking the general assertion

---

[3] The FMCSA defines a broker as "a person or entity which arranges for the transportation of property by a motor carrier for compensation. A broker does not transport the property and does not assume responsibility for the property." FMCSA, *What are the definitions of motor carrier, broker and freight forwarder authorities?*,
https://ask.fmcsa.dot.gov/app/answers/detail/a_id/248/~/what-are-the-definitions-of-motor-carrier%2C-broker-and-freight-forwarder.  While it is unlikely that a carrier's employee or agent would fit this definition, the definition by its terms does not exclude "an employee or agent of a motor carrier" from its scope.  Consequently, a FMCSA broker certification does not necessarily guarantee that an entity is a "broker" within the meaning of the FAAAA.

MEMORANDUM OPINION AND ORDER – PAGE 7

"all Defendants are agents of each other" to mean specifically that all defendants are "agents of a motor carrier" within the meaning of the FAAAA would undermine the assertion that some of the defendants are brokers. It would also give a general, broad-brush statement more specificity than either the text of the statement or the surrounding context of the petition at large warrant. Where the petition allegations seem contradictory, the Court chooses to follow the specific allegations over a general, collective allegation. Thus, the Court determines that J.W. Logistics is a broker under the FAAAA.

Regarding Plaintiffs' common law tort claims, the Court holds that section 14501(c)(1) applies to these types of claims. Section 14501(c)(1) extends to a state "law, regulation, or other provision having the force and effect of law." § 14501(c)(1). Common law claims are "other provisions with the force of law" and consequently may be subject to FAAAA preemption. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281–82 (2014) (holding that state common law rules fall within the analogous Airline Deregulation Act preemption provision because state common-law rules are routinely called "provisions" and "clearly ha[ve] 'the force and effect of law'"). Section 14501(c)(1) is thus applicable to both the parties and claims in this case.

The Court holds, however, that the companion preemption clause, section 14501(b), is not applicable here. Unlike section 14501(c)(1), section 14501(b) specifically limits its preemptive scope to laws related to "*intrastate* rates, *intrastate* routes, or *intrastate* services of any freight forwarder or broker." § 14501(b)(1) (emphasis added); *see also Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1294 (W.D. Okl. 2019) ("The Court views this limitation as a statement of congressional intent to preempt state laws relating only to intrastate


services."). None of the facts alleged in the amended petition suggest that J.W. Logistics offered intrastate services or that the transportation in this case was intrastate rather than interstate. Further, J.W. Logistics has not produced any evidence that would support such an inference. Accordingly, the Court finds that J.W. Logistics has not carried its burden as the removing defendant to establish the applicability of this federal law and focuses solely on section 14501(c)(1) preemption.

### B. Section 14501(c)(1) Does Not Preempts Plaintiffs' Negligence Claim

As of yet, neither the Supreme Court nor the circuit courts have addressed the specific issue whether the FAAA preemption clauses encompass negligence or negligent-hiring claims in personal injury suits against brokers. The district courts that have confronted this question are split on both outcome and rationale. *See Gillum v. High Standard, LLC*, 2020 WL 4444371, at *3–*5 (S.D. Tex. 2020) (collecting cases); *Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1295 (W.D. Okl. 2019) (observing that "district courts are sharply divided" as to whether "personal injury claims alleging negligence by brokers in selecting motor carriers" are preempted). This Court declines to follow those courts that have adopted a single approach to common law claims. *See Scott v. Milosevic*, 372 F. Supp. 3d 758, 770 (N.D. Iowa 2019) (holding that "the FAAAA does not preempt personal injury claims"); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 3d 638, 643 (N.D. Tex. 2010) (holding that section 14501 preempts state law claims other than breach of contract). While Plaintiffs' negligence and negligent-hiring claims are both common law torts, the Court finds that the nuances of the FAAAA warrant differing results under section 14501(c)(1) as to each claim.

MEMORANDUM OPINION AND ORDER – PAGE 9

The Supreme Court has instructed that when Congress has statutorily preempted state laws, "our task is to identify the domain expressly preempted." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (internal quotation omitted). To accomplish this, courts must "focus first on the statutory language, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.* (internal quotation omitted). The key question here is whether section 14501(c)(1)'s text — preempting state laws that "relate to" a broker's "services" "with respect to transportation" — encompasses Plaintiffs' common law negligence claim. While the Supreme Court has determined that the words "related to" evince a broad preemptive scope and encompass state laws "having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly," it has also warned that the FAAAA "does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id.* at 260–61.

In determining whether a tort claim falls within the ambit of preemption provisions, courts frequently look to the facts underlying the claim or the specific nature of the tort claim alleged to determine whether it "relates to" "services." *See Cruz Miguesl Aguina Morales v. Redco Transport Ltd.*, 2015 WL 9274068, at *1 (S.D. Tex. 2015) (collecting cases). Here, the factual allegations underlying the negligence claim are almost entirely based on the driver's operation of the vehicle and the personal injury allegedly caused by that operation.[4] Brokers, however, do not operate vehicles or control vehicle operations.

---

[4] The primary allegation supporting the negligence claim is that Turner, the driver, was "driving recklessly and far exceeding the safe speed" as well as maintaining an unsafe

MEMORANDUM OPINION AND ORDER – PAGE 10

Under the FAAAA's definition, broker services entail the arrangement of transportation.[5] Although this might reasonably involve investigation and selection of a carrier or driver, broker services do not extend to the act of transporting goods or passengers, managing the way in which vehicles are operated, or ensuring the maintenance of vehicles. Plaintiffs' negligence claim in this case implicates the operation and maintenance of the vehicle and the training and management of the driver, which are at best remotely related to the brokers' proffered service: arranging for transportation. *See Dnow, L.P. v. Paladin Freight Solutions, Inc.*, 2018 WL 398235, at *2, *4 (S.D. Tex. 2018) (distinguishing between negligence claims for personal injuries caused by a driver's negligent vehicle operation and negligent-hiring claims related to a broker's carrier selection).

This is a fine distinction, but the Court declines to alter the lines that Congress has drawn by choosing specific statutory language. Further, this interpretation of the statute aligns with Fifth Circuit preemption holdings, which have repeatedly drawn narrow distinctions based on underlying factual pleadings and the specific type of common law claim alleged. *Compare Hodges*, 44 F.3d at 340 (holding a that the ADA does not preempt

---

following distance. Pltfs.' First Am. Pet. [146]. The amended petition also asserts that Defendants were negligent in additional ways and recites over thirty assertions. Five of those relate to negligence in hiring or retaining the driver. To the extent that Plaintiffs seek to bring negligence claims on these grounds, the Court treats such claims as it does the negligent-hiring claim here, assuming they fall within the scope of both 14501(c)(1) nd section 14501(c)(2).

[5] "The term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

MEMORANDUM OPINION AND ORDER – PAGE 11

a negligence claim for personal injury caused by an airline's improper storage of baggage because it relates to airline operations), *with Malik v. Continental Airlines, Inc.*, 305 F. App'x 165, 169 (5th Cir. 2008) (holding that the FAAAA preempted a negligence claim for lost luggage because "her claims are centered on airline personnel's alleged mishandling of her bags, not damage from the way in which the plane was flown," and thus related to airline "services"); *see also Elam*, 635 F.3d at 807, 813–14 (holding that the ADA did not preempt a negligence claim seeking damages for a rail crossing accident but did preempt a negligence *per se* claim based on a state antiblocking statute).[6]

In contrast, the Court assumes without deciding that negligent-hiring claims "relate to" core broker services "with respect to transportation" and are thus within the scope of section 14501(c)(1). Because the Court holds these claims are also within the scope of section 14501(c)(2)'s preemption exception, however, this claim is not preempted either.

### C. Plaintiffs' Negligent-Hiring Claim Falls Within the Scope of Section 14501(c)(2)'s Preemption Exception

Section 14501(c)(2) of the FAAAA is an exception to section 14501(c)(1)'s preemptive scope, providing in relevant part:

> Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor

---

[6] Because the Fifth Circuit has not addressed whether state tort claims are preempted by the FAAAA and in what cases, the Court finds analogous opinions on ADA preemption instructive. *See Finley v. Dyer*, 2018 WL 5284616, at *4 (N.D. Miss. 2018) ("Insofar as the FAAAA's preemption provision is in pertinent part identical to the preemptive provision of the ADA and is generally construed in pari materia, the Court deems this authority extremely persuasive.") (internal quotation omitted).

MEMORANDUM OPINION AND ORDER – PAGE 12

      carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 14501(c)(2)(A). Both the Supreme Court and the Fifth Circuit have held that the safety regulation exception should be broadly construed. *City of Columbus v. Ours Garage and Wrecker Srvc., Inc.*, 536 U.S. 424, 426 (2002) ("Preemption analysis starts with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotation omitted); *VRC LLC v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006) ("Case law both predating and applying the principles discussed in *Ours Garage* has on the whole given a broad construction to the safety regulation exception."). Although there is no controlling authority delineating the precise contours of a state's safety regulatory authority, courts within the Fifth Circuit must "decline to elasticize Congress's economic goal by narrowly interpreting safety regulatory authority of a State with respect to motor vehicles." *Cole v. City of Dallas*, 314 F.3d 730, 734 (2002).

      In applying these principles, the Court holds that personal injury tort claims, including a negligent-hiring claim, are within the scope of section 14501(c)(2)'s exception. To reach this conclusion, the Court must determine both that common law claims constitute an exercise of a state's "safety regulatory authority" and that a negligent-hiring claim asserted against a broker is "with respect to motor vehicles."

      As to the first prong, the Court declines to read "safety *regulatory authority*" as limited to state *regulations* as some courts have done. *See Gillum*, 2020 WL 444371, at *5 ("Plaintiff does not allege that Defendant [] violated any state regulation related to a motor

MEMORANDUM OPINION AND ORDER – PAGE 13

vehicle," and "Defendant did not own or operate any motor vehicle subject to the state's regulatory authority"). While Congress deliberately and repeatedly used the word "regulation" in other provisions of chapter 14501, it used "regulatory authority" in the safety exception. *Compare* § 14501(b) *and* § 14501(c)(1), *with* § 14501(c)(2). The divergence from surrounding provisions suggests this choice was deliberate, and to read "regulatory authority" as "regulations" narrows the safety exception where there is not "clear and manifest" congressional intent to do so.

Further, Supreme Court precedent suggests "regulatory authority" can encompass more than regulations — specifically, that a state's "regulatory authority" authorizes "other provisions having the force and effect of law," which includes common law claims. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles, CA*, 569 U/S. 641, 650–51 (2013) ("The *'force and effect of law' language* in 14501(c)(1) . . . *targets the State acting* as a State, not as any market actor — or otherwise said, the State acting *in a regulatory rather than proprietary mode*") (emphasis added). The structure of section 14501(c)(2)(A) also supports a broad interpretation of a state's "safety regulatory authority." There are three types of exceptions listed in section 14501(c)(2). The second and third list specific types of laws or regulations related to vehicle weight, cargo type, and insurance. The first, by contrast, is relatively open-ended and focuses not on a specific type of law, such as a regulation, but on state authority as it relates to a certain goal — safety.

Some courts assert that "safety regulatory authority *of a State*" cannot include private rights of action. *Miller v. C.H. Robinson Worldwide, Inc.*, 2018 WL 5981840, at *4 (D. Nev. 2018); *Huntington Operating Corp. v. Sybonney Express Inc.*, 2010 WL

MEMORANDUM OPINION AND ORDER – PAGE 14

1930087, at *3 (S.D. Tex. 2010). The fact that the enforcement mechanism is private action appears to this Court nondeterminative, however, as state common law claims exist by force of state authority. *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) ("Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a critical component of the States' traditional ability to protect the health and safety of their citizens.") (internal quotation omitted). Because it is feasible to read "state safety regulatory authority" as encompassing common law claims, the Court declines to adopt a plausible but narrower construction. *See Ours Garage and Wrecker Srvc., Inc.*, 536 U.S. at 438.

Regarding the second prong of the safety exception, the Court also holds that a negligent-hiring claim in a personal injury case is an exercise of regulatory authority "with respect to motor vehicles." The Supreme Court has defined the phrase "with respect to" as "concerning." *See Dan's City Used Cars, Inc.*, 569 U.S. at 261; *see also Finley*, 2018 WL 5284616, at *6. Under the FAAAA, a "motor vehicle" is defined in relevant part as "a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation." 49 U.S.C. § 13102(16). Putting those definitions together, the Court determines that a claim seeking damages for personal injury against a broker for negligently placing an unsafe carrier on the highways is a claim that concerns motor vehicles and their safe operation.

Some courts read this phrase more narrowly as requiring that the law in question be a regulation of a motor vehicle or that the defendant have control over a regulated motor vehicle for the exception to apply. *Gillum*, 2020 WL 444371, at *4; *Volkova v. C.H.*

MEMORANDUM OPINION AND ORDER – PAGE 15

Case 3:19-cv-02424-N   Document 31   Filed 04/28/20   Page 16 of 17   PageID 1175

*Robinson Co.*, 2018 WL 741441, at *4 (N.D. Ill. 2018). This Court does not find textual support for confining the safety regulatory exception this way. As stated above, the preceding phrase "with respect to" is interpreted broadly, and courts should decline to narrowly interpret it as requiring "safety regulation *of* a motor vehicle." In fact, the Fifth Circuit has observed that the term "motor vehicle safety," defined in section 30102(9) of this statute, is "obviously narrower than the term 'safety regulatory authority of a State with respect to motor vehicles'" used in section 14501(c)(2)(A). *Cole*, 314 F.3d at 733. Further, section 14501(c)(2)(A) neither mentions "control" nor confines its scope to parties that typically control motor vehicles, such as carriers.

Some courts insist that this interpretation opens the door to "all" otherwise-preempted claims avoiding the reach of the FAAAA's preemptive provisions. *Creagan v. Wal-Mart Trans., LLC*, 354 F. Supp. 3d 808, 814 (N.D. Ohio 2018) (rejecting an interpretation that claims may trigger the safety regulatory exception if they "concern" motor vehicles because "if this were so, all preempted claims would then be 'saved'"). The Court disagrees. Only claims plausibly related to safety and respecting motor vehicles will fit. And these claims are intended to avoid preemption, as the FAAAA was enacted with the primary goal of minimizing economic regulation, not state police power over safety regulation. *Ours Garage and Wrecker Srvc., Inc.*, 536 U.S. at 439 ("Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety."). Where the provisions occasionally clash, the Fifth Circuit has instructed that a "congressional decision to enact both a general policy that furthers a

MEMORANDUM OPINION AND ORDER – PAGE 16

particular goal and a specific exception that might tend against that goal does not invariably call for the narrowest possible construction of the exception." *Cole*, 314 F.3d at 733. The Court thus finds Plaintiffs' negligent-hiring claim falls within the scope of the safety regulation exception.

## Conclusion

The Court holds that section 14501(c)(1) does not preempt Plaintiffs' negligence claim against J.W. Logistics. Because the Court holds that the safety regulation preemption exception in section 14501(c)(2) applies to negligent-hiring claims against brokers, that claim is also not preempted. Because the Court holds that there is no ordinary preemption of these claims under the FAAAA, there cannot be any complete preemption either. Accordingly, the Court determines that Plaintiffs' claims against J.W. Logistics are not federally preempted and that it lacks subject-matter jurisdiction over the case. The Court remands the case to the 116th District Court in Dallas County, Texas.

Signed April 28, 2020.

David C. Godbey
United States District Judge